**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

JOHN E. QUIGLEY; and )
FRANCES QUIGLEY, on behalf of )
the ConocoPhillips Savings Plan and )
a class of similarly situated participants )
of the Plan, )
                               )
       Plaintiffs, )
                               )
v. )      Case No. CIV-23-62-SLP
                               )
CONOCOPHILLIPS COMPANY; )
THE CONOCOPHILLIPS COMPANY )
BENEFITS COMMITTEE; and )
JOHN/JANE DOES 1-5, )
                               )
       Defendants. )

# O R D E R

    Before the Court is Defendants' Motion to Transfer Venue and Brief in Support [Doc. No. 30]. Pursuant to 28 U.S.C. § 1404(a), Defendants move to transfer this action to the United States District Court for the Southern District of Texas, Houston Division. Plaintiffs oppose the requested relief. The Motion is fully briefed and at issue. *See* Pls.' Resp. [Doc. No. 31] and Defs.' Reply [Doc. No. 32].[1] For the reasons that follow, Defendants' Motion is GRANTED.

## I.   Introduction

    Named Plaintiffs, John F. Quigley and Frances Quigley (jointly, the Quigleys), former employees of Defendant ConocoPhillips Company (ConocoPhillips), bring this

---

[1] Citations to the parties' briefing submissions, including exhibits, reference the Court's ECF pagination.

putative class action on behalf of the ConocoPhillips Savings Plan (the Plan) and a class of similarly situated participants in the Plan whose retirement assets were invested in the Phillips 66 Stock Fund or the Phillips 66 Leveraged Stock Fund (the Funds) from January 18, 2017, to the date of judgment in this action (the Class Period).  The Quigleys' claims arise under the Employee Retirement Income Security Act of 1974 (ERISA) and allege breaches of fiduciary and co-fiduciary duties by Defendants resulting in a loss of millions of dollars in retirement savings.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[2]  Defendants seek to enforce the Plan's forum selection clause which designates the venue for any action related to the Plan as the federal courts in Harris County, Texas.[3]  And Defendants properly invoke § 1404(a) to do so. *See Atl. Marine Constr. Co., Inc. v. U. S. Dist. Court*, 571 U.S. 49, 52 (2013) (appropriate mechanism for enforcement of a forum selection clause when, as here, the provision points to another federal court, is a motion for transfer under § 1404(a)); *see also Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 668 (10th Cir. 2020).  Alternatively, absent enforcement of the forum selection clause, Defendants contend a transfer would serve the

---

[2] Although left unaddressed by the parties (perhaps due to the obviousness of the issue), this case is one which "might have been brought" in the United States District Court for the Southern District of Texas.  Therefore, that requirement of § 1404(a) is satisfied.

[3] Harris County, Texas is located within the confines of the federal judicial district for the Southern District of Texas and within the Houston division of that district.  *See* 28 U.S.C. § 124(b)(2).

convenience of the parties and witnesses and promote the interest of justice because the "center of gravity" of this action is Houston, Texas.

In opposing a transfer, the Quigleys contend the Plan's forum selection clause does not apply to them because they terminated service prior to the effective date of the Plan's most recent amendments and restatements. The Quigleys further argue that the scope of the forum selection clause applies only to claims for benefits and they bring no such claims in this action. Finally, the Quigleys argue that a transfer is improper under § 1404(a) because their choice of forum should not be disturbed. The Quigleys point to the fact that they now reside in Oklahoma and assert that there are additional class members who reside in Oklahoma but no longer work for the company.

## II.    **Relevant Facts**[4]

The Preamble states that the Plan was originally established on December 31, 2002. *See* Plan [Doc. No. 30-2] at 8. The Plan has been amended and restated multiple times, the most recent of which occurred effective January 1, 2022, and applies to:

> a Participant who continues his service on and after the Effective Date, and, except as otherwise expressly set forth herein, the benefits, if any of a Participant (and his Beneficiaries) who terminated service prior to the Effective Date shall be determined under the non-administrative provisions of the Plan as in effect on the date his service terminated.

---

[4] The Court may consider matters outside the pleadings in ruling on a motion to transfer venue under § 1404(a). *See, e.g., Woods v. United States*, No. 2:16-CV-1041-JCH/SMV, 2017 WL 4736722, at *4 (D.N.M. Oct. 19, 2017) ("Courts in this circuit have recognized that when reviewing a motion to transfer, 'a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.'" (quoting *Thompson v. Titus Transp., LP*, No. 11-CV1338-EFM-KMH, 2012 WL 5933075, at *3 (D. Kan. Nov. 27, 2012)).

*Id*.  It is undisputed that the Quigleys stopped working for ConocoPhillips in 2007 prior to the Plan's amended and restated "Effective Date" of January 1, 2022.  Hunt Decl. [Doc. No. 30-1], ¶ 17.  As set forth in the Preamble, therefore, any determination of the Quigley's *benefits* are governed by the non-administrative provisions of the Plan in effect in 2007 – when their respective service terminated.  The parties agree, however, that the Quigleys' claims in this action have nothing to do with any determination of benefits.

Defendants provide undisputed evidence that the Plan has included a forum selection clause for the entirety of the alleged Class Period.  *See* Hunt Decl., ¶ 13.  The forum selection clause is found under Article II governing "**ADMINISTRATION OF THE PLAN**."  *See* Plan [Doc. No. 30-2] at 23, 27.  Section 2.15 is headed "**Presenting Claims and Appeals for Benefits**."  Subdivision (e) provides:

> <u>**Limitation of Actions**</u>:  Notwithstanding anything in this Section or any other provision of the Plan to the contrary, no action at law or equity shall be brought to recover under the Plan until the Claimant's rights set forth in this Section have been exhausted.  A Claimant must bring any legal or equitable action to contest that decision under this Section within two years after the date that the Committee sends written or electronic notification of such final adverse determination to the Claimant, or the Claimant's right to bring such a legal or equitable action will be waived in full.  ***The venue for <u>any</u> actions related to the Plan <u>shall be in the federal courts in Harris County, Texas</u>***.

*Id*. at 29 (emphasis added).  Subdivisions (a)-(d) of section 2.15 address matters relating to claims for benefits under the Plan, including appeals for such benefits.

The Quigleys were employed by ConocoPhillips in Borger, Texas.  Hunt Decl., ¶ 17.  They both participated in the Plan.  *Id*., ¶ 18.  Francis Quigley withdrew all her

investments from the Plan in 2008 and John Quigley withdrew all his investment from the Plan in 2020.  *Id.*

## III.  <u>Discussion</u>

The Court first addresses whether a transfer is proper based on enforcement of the forum selection clause.[5]  The Court then addresses, in the alternative, whether a transfer is proper under the factors set forth in § 1404(a).

### A.    Enforcement of the Forum Selection Clause

Where the parties have previously agreed that any disputes between them be litigated in a particular venue or forum, a federal district court may be required to give effect to that agreement.  *Elna Sefcovic, LLC*, 953 F.3d at 668.  Courts "will enforce a mandatory forum selection clause unless the party challenging it clearly show[s] that enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching."  *Nieme v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (internal quotation marks and citation omitted).[6]

---

[5] Defendants argue that forum selection clauses in ERISA plans are enforceable.  *See* Defs.' Mot. at 16-18; Defs.' Reply at 2.  Because the Quigleys do not take a contrary position, the Court assumes, without deciding, that a valid forum selection clause is not inconsistent with ERISA. *See, e.g., F.F. v. Capital Bluecross*, No. 2:22-cv-494-RJS-JCB, 2023 WL 2574367 at *5-6 (D. Utah Mar. 20, 2023) (concluding that "a valid forum-selection clause may govern venue selection in an ERISA case" and noting that "[t]he majority of courts to consider this question, including in the Tenth Circuit," have reached the same conclusion); *see also Williams v. Ascension Health Long-Term Disability (LTD) Plan*, No. 16-1361-JTM, 2017 WL 1540635 at *2 (D. Kan. Apr. 28, 2017) ("The majority of courts to consider the question have held that forum-selection clauses are not inconsistent with [29 U.S.C.] § 1132(e)(2) or any other provision of ERISA.").

[6] Neither party disputes that the forum-selection clause at issue is mandatory, and the Court finds the clause is mandatory.  *See, e.g., Elna Sefcovic, LLC* 953 F.3d at 673 ("[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced[.]" (citation omitted)).  Instead, the parties dispute its applicability to the Quigleys and its scope.

As set forth, there is no dispute that the Quigleys stopped working for ConocoPhillips in 2007. Because their service did not continue on and after the "Effective Date" the Quigleys contend the "non-administrative provisions of the Plan as in effect" in 2007 apply to them. Pls.' Resp. at 7. According to Plaintiffs, therefore, the forum selection clause is inapplicable.[7]

Defendants counter that the preamble only addresses under which Plan "benefits . . . shall be determined," not which version of the Plan applies to the Quigleys, generally. According to Defendants, the forum-selection clause is not a substantive provision pursuant to which "benefits . . . shall be determined" and, therefore, the preamble does not change the application of the forum selection clause. Defs.' Reply at 3.

As both parties have addressed, a similar issue was confronted by the court in *Mabry v. ConocoPhillips Co.*, No. 3:20-39, 2021 WL 189144 (D. Alaska Jan. 19, 2021). In *Mabry*, a different Plan of Defendants was at issue – the ConocoPhillips Retirement Plan (the Retirement Plan). The plaintiff, Mr. Mabry, a beneficiary of the Retirement Plan, brought an action under ERISA against Defendant ConocoPhillips, and others, for breach of fiduciary duty.

Mr. Mabry was laid off by ConocoPhillips on April 9, 2009. Mr. Mabry was a participant in the Retirement Plan. As in this case, the Retirement Plan had subsequently been amended and restated. The Plan effective in 2019 contained a forum selection clause

---

[7] The version of the Plan in effect at that time the Quigleys' terminated their service is not part of the record before the Court. The Quigleys, however, do not dispute that the forum selection clause has been a part of the Plan for the entirety of the Class Period.

similar to that at issue in this case. The preamble to the Plan effective in 2019 provided that "except as otherwise expressly set forth herein," a participant's "rights and benefits, if any, . . . shall be determined under the provisions of the Plan in effect on the date his service terminated."

Like the Quigleys, Mr. Mabry argued that because his employment was terminated in 2009, the Plan effective in 2019 did not control.  And, like the Defendants here, in *Mabry*, ConocoPhillips argued that the Plan in effect when Mr. Mabry retired governed only issues related to his substantive vested benefits and that any "procedural or administrative aspects of the Plan" were governed by the Plan in effect in 2019.  The court sided with Mr. Mabry, finding that "the forum selection clause in the 2019 Plan does not "expressly set forth" that it applies to previous versions of the Plan. *Id*. at *4.  The court did not address the substantive/administrative distinction that had been argued by ConocoPhillips.

In their Reply, Defendants emphasize that the preamble to the 2019 Plan at issue in *Mabry* is different from the preamble in the Plan at issue here and submit the following chart to emphasize those differences:

| *Mabry* Preamble<br>(Defined Benefit Plan) | Preamble At-Issue<br>(Defined Contribution Plan) |
|---|---|
| The provisions of the Plan shall apply to a Participant who continues his service on and after the Effective Date, and, except as otherwise expressly set forth herein, the **rights and benefits, if any,** of a Participant (and his beneficiaries) who terminated his service prior to the Effective Date shall be determined under **the provisions** of the Plan as in effect on the date his service terminated. | The provisions of the Plan shall apply to a Participant who continues his service on and after the Effective Date, and, except as otherwise expressly set forth herein, the **benefits, if any,** of a Participant (and his Beneficiaries) who terminated service prior to the Effective Date shall be determined under **the non-administrative provisions** of the Plan as in effect on the date his service terminated. |

Defs.' Reply at 4.

The Court agrees with Defendants that a comparison of the preambles makes clear that the preamble at issue here is narrower in scope than that at issue in *Mabry*. The "non-administrative" provisions of the Plan in effect at the time of Mr. Quigley's cessation of employment, govern the determination of Mr. Quigley's "**benefits**." But the "administrative" provisions of the Plan during the Class Period, which include the forum-selection clause, govern any matters outside of those involving a determination of benefits. The Court, therefore, concludes that the forum selection clause applies.

The Court must next decide the scope of the forum selection clause. The Quigleys contend that even if the forum selection clause applies, it is limited to claims for benefits. Plaintiffs point to the *location* of the forum selection clause in the 2022 Plan – i.e., it is found under Article II governing "**ADMINISTRATION OF THE PLAN**." *Id.* at 23. Section 2.15 is headed "**Presenting Claims and Appeals for Benefits**." Subdivision (e) provides:

8

<u>Limitation of Actions</u>:  Notwithstanding anything in this Section or any other provision of the Plan to the contrary, no action at law or equity shall be brought to recover under the Plan until the Claimant's rights set forth in this Section have been exhausted.  A Claimant must bring any legal or equitable action to contest that decision under this Section within two years after the date that the Committee sends written or electronic notification of such final adverse determination to the Claimant, or the Claimant's right to bring such a legal or equitable action will be waived in full.  ***The venue for any actions related to the Plan shall be in the federal courts in Harris County, Texas***.

*Id*. at 29 (emphasis added).

Defendants point to the *language* of the forum selection clause as opposed to where it is located in the 2022 Plan.  Defendants contend that the language of the clause is broad, providing that it covers "*any* actions *related to* the Plan" (emphasis added).

"The scope of a forum-selection clause is evaluated according to ordinary principles of contractual interpretation."  *Kelvion, Inc. v. PetroChina Canada, Ltd*., 918 F.3d 1088, 1092 (10th Cir. 2019).  Here, the Court finds the forum selection clause is clear and unambiguous.  The Court rejects Plaintiffs' argument that the clause applies only to claims for benefits.  Construing the clause in that manner would be contrary to its clear and unambiguous language.  *Compare Case v. Generac Power Sys., Inc*., No. C21-752 RSM, 2021 WL 4033299 (W.D. Wash. Sept. 3, 2021) (finding that ERISA plan's forum selection clause, applying to "any legal action . . . brought in connection with the Plan" was "broadly" drafted and rejecting plaintiff's argument that because forum selection clause was proceeded by language related to denial of benefits,  forum selection clause did not apply to ERISA claim for breach of fiduciary duties); *see also Trauernicht v. Genworth Fin., Inc*., No. 3:22-cv-532, 2022 WL 18027618 at *3 (E.D. Va. Dec. 30, 2022) (enforcing forum-selection clause in ERISA class action alleging breach of fiduciary duties and

declining to transfer case from the Richmond Division where "clear language of the clause" provided that any action related to the ERISA plan must be brought "in the Federal District for the Eastern District of Virginia, located in Richmond, Virginia"); *Prestige Oilfield Servs., LLC v. Devon Energy Prod. Co., L.P.*, No. 18-1173 GBW/GJF, 2019 WL 764669 at *4-7 (D.N.M. Feb. 21, 2019) (rejecting argument that scope of forum selection clause was limited by its placement in section of agreement headed "Indemnification and Defense" and concluding that clause applied to agreement as a whole).

Where, as here, "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62. In challenging the forum selection clause, Plaintiffs make no arguments that enforcement of the clause would be unreasonable and unjust, or that any fraud or overreaching has occurred. Nor does the record show that this case is "most unusual" such as to warrant any deviation from holding the parties to their bargain. *Id.* at 66. Accordingly, the Court concludes that the forum-selection clause requires transfer of this action to the United States District Court for the Southern District of Texas.

**B.    Transfer of Venue For the Convenience of Parties and Witnesses, in the Interest of Justice**

Alternatively, a transfer is proper even if the forum selection clause is not enforceable as to the Quigleys. Under § 1404(a), Defendants, as movants, bear the burden of establishing the existing forum is inconvenient. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). "[U]nless the balance is strongly in favor of the movant, plaintiff's choice of forum should rarely be disturbed." *Id.* Furthermore, "[m]erely shifting the

10

inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Id*. at 966.

The following discretionary factors guide the Court's consideration of a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc*., 928 F.2d 1509, 1516 (10th Cir.1991)).

In moving for transfer, Defendants acknowledge that two factors are not implicated – the possibility of the existence of questions arising in the area of conflict of laws and questions as to the enforceability of a judgment if one is obtained.  *See* Defs.' Mot. at 21, n.6.  But Defendants argue that other factors "overwhelmingly favor transferring this dispute to Houston."  *Id*. at 21.  Specifically, Defendants address the following factors: (1) the plaintiff's choice of forum; (2) accessibility of witnesses and other sources of proof; (3) difficulties that may arise from congested dockets; (4) the advantage of having a local court determine questions of local law; and (5) all other considerations of a practical nature that make a trial easy, expeditious and economical.  As the Quigleys point out, Defendants do not seriously contest factor three.  Defendants, concede that "[t]here are no apparent

difficulties arising from congested dockets." *See* Defs.' Mot. at 23-24.   The Court, therefore, focuses on factors one, two, four and five.

### The Plaintiff's Choice of Forum

Defendants argue that the plaintiff's choice of forum is of more limited significance where, as here, the action is brought as class representative.  *See, e.g., Brannon v. Express Scripts Holding Co.*, No. 17-2497-DDC-TJJ, 2018 WL 263237 at *5 (D. Kan. Jan. 2, 2018) (recognizing that "when a plaintiff brings an action as class representative, the weight normally given to his choice of forum is diminished" (internal quotation marks and citation omitted); *see also Teets v. Great-West Life & Annuity Ins. Co.*, No. 2:14-cv-1360 KJM DAD, 2014 WL 4187306 at *2 (E.D. Cal. Aug. 21, 2014) (plaintiff's choice of forum is entitled to little weight in putative class action complaint alleging breach of fiduciary duty under ERISA where plaintiff purports to act as representative of nationwide class). Additionally, Defendants have submitted evidence that during the Class Period and as of December 31, 2022, the majority of Plan participants resided in Texas.  Hunt Decl., ¶ 12.

In response, the Quigleys primarily argue that venue is proper in this judicial district because they reside here.[8]  The Quigleys further argue, without evidentiary support that "[a]dditional class members, like them, reside in Oklahoma but no longer work for the company."  Resp. at 15.  The Quigleys fail to address where the other alleged "thousands" of potential class members may reside, *see* Compl., ¶ 71, and do not refute Defendants'

---

[8] It appears the Quigleys resided in Oklahoma for less than one year prior to initiating this action. *See* Hunt Decl., ¶ 19.

evidence that the majority of Plan participants reside in Texas.  Under the circumstances of this putative-class-action case, where it does not appear the majority of class members reside in this forum, the Court finds the Quigleys' choice of forum carries little weight.

### Accessibility of Witnesses and Other Sources of Proof

ConocoPhillips, the sponsor of the Plan under ERISA, maintains its principal place of business and corporate headquarters in Houston.  *See* Hunt Decl., ¶ 4.  As the Quigleys acknowledge, "this case concerns the Benefit Committee's investment decisions on behalf of the Plan."  *See* Pls.' Resp. at 11.  The Benefits Committee, the designated administrator of the Plan under ERISA, has maintained its sole address in Houston during the entire alleged Class Period.  Hunt Decl., ¶ 7.  The majority of employees who have served on the Benefits Committee have worked in Texas and the members of the Benefits Committee are appointed by the Board of Directors, based at the corporate headquarters in Houston.  *Id.*, ¶ 8.  The Benefits Committee hard-copy records are maintained in Houston and the Claims Administrator maintains its sole address in Houston.  *Id.*, ¶¶ 10-11.

The Quigleys argue that one potential witness "appears" to reside in Oklahoma because he "previously signed a declaration in Bartelsville [sic], Oklahoma, where ConocoPhillips has offices."  Pls.' Resp. at 17-18.  Plaintiffs further argue that the Plan's Auditor since 1988, Ernst & Young, is located in Tulsa, Oklahoma.  *Id.* at 18.  These facts fail to establish that witnesses and other sources of proof are more accessible in this judicial district.  To this end, the Court notes that both Bartlesville, Oklahoma and Tulsa, Oklahoma are outside the confines of this judicial district.  *See* 28 U.S.C. § 116.  Thus, the Court finds

Defendants have demonstrated that Houston is clearly the more accessible forum with respect to witnesses and other sources of proof.

### Questions of Local Law

The Plan provides that it "shall be construed, regulated and administered under the laws of the State of Texas, subject, however, to such determinations under the Plan as may be governed by ERISA and related provisions of the Code." Plan [Doc. No. 30-2], § 12.2; *see also* Hunt Decl., ¶ 5. Based on this provision of the Plan, questions of local law, should they arise, are more properly addressed in a federal district court based in Texas. This factor, therefore, weighs in favor of transfer.[9]

### Fair Trial and Other Practical Considerations

The Court agrees with Defendants that the locus of the dispute, including witnesses and evidence in Houston, favors a trial of this case in Houston. The claims at issue focus on the conduct of Defendants and their alleged mismanagement and breaches of fiduciary duties occurring within the Southern District of Texas. Although Plaintiffs state that they are willing to depose any Texas-based witness in Texas or any other state where that witness resides, *see* Pls.' Resp. at 18, ultimately, the subpoena power of this Court over such witnesses is limited, both as to discovery and trial. There is very little before this

---

[9] The Quigleys argue that the key issue in this case – "whether ERISA's duties of prudence and loyalty . . . were violated by maintaining the Plan's investment in Phillips 66 Stock" is "a federal question" and, therefore, this factor does not support a transfer. *See* Pls.' Resp. at 19. But as the Tenth Circuit has noted in addressing ERISA-based claims, "to say that federal law governs . . . is not to say that state law is irrelevant. In resolving a federal claim, questions may arise that cannot be answered by statutory interpretation. The court must then adopt a federal common-law rule of decision or incorporate state law." *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1280 (10th Cir. 2020). Accordingly, the Court deems the Plan's choice of law provision relevant to the transfer analysis and its existence weighs in favor of transfer.

Court to establish sufficient connections to this judicial district, other than the fact that the Quigleys reside here. As noted, the Quigley's reliance on their individual convenience is unavailing in the context of this class-action lawsuit where the Quigleys seek to represent a class, the vast majority of which appear to reside in Texas.

In sum, the Court finds on balance, the factors governing a transfer under § 1404(a) weigh in favor of a transfer of this action.

**IV.**    <u>**Conclusion**</u>

On the record presented, and having fully considered the parties' briefing, the Court finds this action should proceed in the United States District Court for the Southern District of Texas, Houston Division.

IT IS THEREFORE ORDERED that Defendants' Motion to Transfer Venue and Brief in Support [Doc. No. 30] is GRANTED and this case is TRANSFERRED to the United States District Court for the Southern District of Texas, Houston Division. The Clerk of Court is directed to take all actions necessary to effectuate the transfer.

IT IS SO ORDERED this 12th day of February, 2023.

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**

15